Objections to this Report and Recommendation (the "R&R") were due 8/18/23. None have been received. I therefore review for clear error. *See Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y. 1991); *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985); Fed.R.Civ.P. 72 advisory committee's note (b). Finding no error, clear or otherwise, the R&R is adopted as the decision of the Court. The Petition is denied. Further, because reasonable jurists would not find it debatable that Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. 2253(c). The Clerk shall close the case.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO ORDERED.

*Cathy Seibel*      8/25/23

CATHY SEIBEL, U.S.D.J.

-------------------------------------------------------X

ENGLISH THOMAS,

                        Petitioner,

        -against-

MICHAEL KIRKPATRICK, Superintendent,

                      Respondent.

-------------------------------------------------------X

**REPORT AND RECOMMENDATION**

18 Civ. 0051 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

Petitioner English Thomas ("Petitioner"), proceeding *pro se*, filed[1] a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") on September 11, 2017 in the Eastern District of New York (Docket No. 1) ("Petition"). The Petition was transferred to the Southern District of New York on January 3, 2018. (Docket No. 5). Respondent opposed the Petition on April 25, 2018, (Docket No. 16) ("Resp't Br."), and Petitioner replied on November 5, 2018, (Docket No. 25) ("Pet'r Reply"). For the reasons set forth herein, I respectfully recommend that the Petition be denied in its entirety.

## I. BACKGROUND

### A. The Crimes and Indictment

Petitioner's convictions arise out of a shooting that occurred on April 21, 2010, at the home of the decedent, Sandra Hackley-Cornielle ("Hackley"), located at 1159 Yonkers Avenue in Yonkers, New York. (Trial Tr.[2] at 201–05, 514–15). Construing the evidence in the light

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the "*Houston* prison mailbox rule"). Petitioner certified he delivered his Petition to prison authorities for mailing on September 11, 2017. (Petition at 18). Because the timeliness of the Petition is not challenged, the Court adopts Petitioner's dates for this filing and all other filings discussed herein.

[2] Refers to the transcript of Petitioner's trial, which began on January 16, 2013.

most favorable to the State, *see, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007), the following facts were established at trial.

Hackley, her husband, Rafael Cornielle ("Cornielle"), and her twelve-year-old daughter, Juliandra Pena ("Pena"), were shot when intruders entered their apartment building and murdered Hackley. (Trial Tr. at 174–78, 201–03, 279–81, 299–300).  On the day of the killing, Petitioner called out sick from his job at the United States Merchant Marine Academy ("MMA") in Long Island and drove to Yonkers with his cousin, Kasaun White ("White"), and White's friend, Charles Parsley ("Parsley"). (*Id.* at 536–37, 670–71, 1145).  Petitioner drove a dark blue 2001 Ford F-150 four-door pickup truck bearing New York license plate number "DLM 2196" (the "Truck"). (*Id.* at 408–11, 419, 521, 928, 950–51).

At approximately 9:43 a.m. on the morning of the shooting, Metropolitan Transportation Authority ("MTA") surveillance cameras captured the Truck driving over the Robert F. Kennedy ("RFK") Bridge from Queens towards the Bronx. (*Id.* at 192–203, 950–51, 627–35; *see also* Jan. 3-4, 2013 Hearing Tr. at 102) ("Pretrial Hr'g Tr.").  Upon arriving in Yonkers, Petitioner drove White and Parsley to Hackley's apartment building. (*Id.* at 407–20, 516–20, 546, 714–15, 719–21, 731).  The men waited outside of the building for approximately nine-and-a-half hours, during which time Petitioner occasionally moved the Truck to different locations in the apartment building's parking lot. (*Id.* at 407–20, 516–20, 546, 627–35, 714–15, 719–21, 731).  Neighbors noticed the Truck because Petitioner parked in the superintendent's daughter's parking spot, as well as parking spots assigned to other residents. (*See, e.g.*, *id.* at 313–24, 409, 520).  Raymond Colon ("Colon"), a neighbor, testified that he observed a blue, four-door Ford pick-up truck with tinted windows, chrome handles, and rain guards parked outside of 1159 Yonkers Avenue at approximately 5:30 p.m on April 21, 2010. (*Id.* at 408–12).  Colon looked closely at the car, because he was interested in purchasing a similar model. (*Id.* at 408).

At approximately 7:30 p.m., a neighbor let Parsley into the apartment building. (*See id.* at 498). Parsley positioned himself near the laundry room, which was across the hall from Hackley's apartment. (*Id.* at 90, 200, 217–18, 238–39, 240–45, 251, 1244). White waited outside of the building, posing as a United Parcel Service ("UPS") delivery person, wearing a faux uniform and holding a package. (*Id.* at 196–200, 245, 251). The package, which was filled with medical supplies, was addressed to Tracey Hinton's ("Hinton"), workplace. (*Id.* at 816–17, 848). Hinton is Petitioner's aunt, with whom Petitioner lived in Westhempstead, New York at the time of the shooting. (Pretrial Hr'g Tr. at 20).

White used the building's intercom to buzz Hackley's apartment and told Corneille through the intercom that he had a "package for Sandra." (Trial Tr. at 195–201). Corneille allowed White into the building. (*Id.*). When Corneille came to the door, Parsley and White rushed toward him, attempting to push their way into Hackley's apartment. (*Id.* at 195–96). In the process, Parsley shot Corneille in the chest, leg, and arm. (*Id.* at 195–204). Believing the men would pursue him, Corneille fled the apartment in search of police. (*Id.* at 204–07). In pain from his gun-shot wounds, Corneille collapsed on a bench outside of the apartment building. (*Id.* at 207).

At the time Corneille was shot, Hackley, who was in her bedroom with Pena, heard a "loud bang" and rushed to the front of the apartment to investigate. (*Id.* at 1241–42). Pena followed Hackley out of Hackley's bedroom and witnessed Parsley fatally shoot her mother. (*Id.* at 1242–43, 1305). During the shooting, Pena was shot in the left thigh. (*Id*. at 300, 1050, 1245). Terrified, Pena ran back to her mother's bedroom with her younger sister, Jaylene. (*Id.* at 1244). Pena used her mother's cell phone to call the police. (*Id.*).

While outside of the apartment building, Corneille observed White leave the building and enter the Truck. (*Id.* at 208). White was limping. (*Id.*). Brenda Cortes ("Cortes"), a neighbor,

also observed a man later identified as White limp toward and enter the Truck. (*Id.* at 536). Cornielle watched the Truck drive away. (*Id.* at 209).

Law enforcement arrived on the scene shortly after 7:40 p.m. (*Id.* at 151–53).  The Yonkers Police Department's Emergency Service Unit forced entry into Hackley's apartment. (*Id.* at 157).  Police Officer ("Officer") David MacDonald ("MacDonald") confirmed that Hackley was dead. (*Id.* at 158).  Officer Joseph Mahoney ("Mahoney") ushered Pena and Jaylene to the police station. (*Id.* at 159).

The police retrieved surveillance footage from outside of the apartment building, (*id.* at 139–140), from which a detective identified White and Parsley, who had both been involved in criminal activity in Long Island, (*id.* at 1323–24, 1430–36).  Parsley was also connected to the scene by a neighbor who witnessed an individual he later identified as Parsley purchase a cigar from a nearby deli about thirty minutes before the shooting. (*Id.* at 487–90, 495).  Police found a cigar butt in the rear parking lot of the building that contained a "complete" match to Parsley's DNA profile. (*Id.* at 1201–05, 1352–53, 1383–87).

Another neighbor who witnessed the events stopped Cortes and handed her a napkin with the license plate number "BLM-2196" written on it, which Cortes handed to Officer Michael Koch ("Koch"). (*Id.* at 537–38, 603–10).  Related searches led police to a Ford pick-up truck with the license plate number "DLM-2196," (*id.* at 664–66, 674, 943), which police determined was registered to Hinton, Petitioner's aunt, (*id.* at 664–73).  Police also obtained MTA surveillance footage, which showed the Truck driving over the RFK bridge toward the Bronx at approximately 9:43 a.m. and then toward Queens at 7:48 p.m., approximately 18 minutes after the shooting occurred. (*Id.* at 192–203, 256–58, 950–51, 627–35).

At approximately 10:00 p.m. that evening, Petitioner picked up his then girlfriend, Rhakia Hoist ("Hoist"), from school in Long Island. (*Id.* at 926–28, 932–34).  Petitioner arrived

late. (*Id.* at 926).  When Hoist asked Petitioner why he had not answered his phone all day,

Petitioner responded that he had "fucked up," and told her not to look in the back of his truck,

which was covered in blood. (*Id.* at 257–58, 932–36, 1413–15).  Petitioner stopped at Walgreens

to purchase a cleaning product and removed the blood from the back seat of his car with a spare

T-shirt. (*Id.* at 936–39, 964).  Petitioner confessed to Hoist that he had driven "uptown" with

White to collect money and that a "scuffle" had ensued. (*Id.* at 939–40).  Petitioner told Hoist

that he observed White and the other man run out of the building and also heard a gunshot. (*Id.*).

Petitioner further stated that he took White to the hospital, describing himself as the "getaway

driver." (*Id.* at 939–42).

On May 3, 2010, the police stopped Petitioner in Westhempstead for a driving infraction

while he was driving the Truck. (Pretrial Hr'g Tr. at 11).  Petitioner admitted to police that the

Truck belonged to Hinton, that he lived with Hinton, and that he regularly drove the Truck. (*Id.*

at 28-29).

Approximately eighteen months later, on October 19, 2011, Petitioner was arrested at

Hinton's home in Westhempstead. (Pretrial Tr. at 108).  While in custody, Petitioner told Officer

Vincent DiDio ("DiDio"): "Yonkers detectives came and spoke to me a long time ago.  What

took you guys so long to come and arrest me?" (*Id.* at 114).  At the time of his arrest, the Truck

was seized by police. (*See id.*).  Police found blood on the floor of the backseat that had a high

statistical probability of belonging to White. (Trial Tr. at 1250–59, 1376–77, 1384, 1392).

On October 19, 2011, Petitioner was charged by indictment with the following crimes:

(1) two counts of Second-Degree Murder under N.Y. Penal Law § 125.25; (2) one count of

Second-Degree Attempted Murder under N.Y. Penal Law §§ 110, 125.25; (3) three counts of

First-Degree Assault under Penal Law § 120.10; (4) one count of First-Degree Burglary under

N.Y. Penal Law § 140.30; (5) two counts of Second-Degree Criminal Possession of a Weapon

under N.Y. Penal Law § 265.03; and (6) one count of Tampering with Physical Evidence under N.Y. Penal Law § 215.40. (Docket No. 16-1 at 2–8).

**B. Pretrial Hearings**

Pretrial hearings were held on January 3 and 4, 2013. (Pretrial Hr'g Tr. at 1–238). The Government called Detective William T. Craft ("Craft"), Special Agent Carmine Esposito ("Esposito"), and Detective DiDio. Esposito and DiDio testified that they interviewed Hoist in connection with their investigation of Petitioner. (*Id.* at 64–71, 98, 102–03). On September 21, 2011, DiDio performed a confirmatory identification procedure with Hoist, in which he showed her a still photograph from an MTA surveillance video showing an individual driving through a toll booth over the RFK bridge from Queens to the Bronx at approximately 9:43 a.m. on April 21, 2010. (*Id.* at 102). Hoist confirmed that Petitioner was depicted in the photograph, stating: "This is the truck that [he] always picks me up in, and that's the same Yankee hat he always has on all the time." (*Id.* at 103).

Defense counsel objected to the introduction of Hoist's testimony that Petitioner was the individual depicted in the MTA surveillance photographs. (*Id.* at 137, 162, 210–220). The defense argued that under New York law, identification testimony from an individual who is not an eyewitness to a crime is only admissible if the defendant has altered their appearance. (*Id.* at 214–16). The court disagreed and admitted Hoist's testimony. (*Id.* at 218).

**C. Trial and Verdict**

The Honorable Barbara G. Zambelli presided over the trial, which commenced on January 16, 2013 with opening statements. (*Id.* at 1–53). In support of its case-in-chief, the People called:[3] Lidietty Then, (*id.* at 56–84); Sergeant Robert Young, (*id.* at 85–104); Officer Marc

---

[3] Additionally, the People entered a stipulation regarding retired Detective Wilson Gonzalez's testimony. (Trial Tr. at 226–27).

Luquis, (*id.* at 104–12); Olga Pacheco, (*id.* at 113–47); Officer Joseph Mahoney, (*id.* at 148–70); Cornielle, (*id.* at 171–268); Officer Koch, (*id.* at 268–87); Officer Betty Morales, (*id.* at 291–307); Officer Vincent Saponara, (*id.* at 307–30); Officer Michael Burlingham, (*id.* at 330–79); Colon, (*id.* at 404–30); Anthony DeLuca, (*id.* at 484–513); Cortes, (*id.* at 513–76); Daniel Higgins, (*id.* at 598–617); James Mulchay, (*id.* at 617–47); Detective William Sullivan, (*id.* at 647–78); Sergeant Gregory McCue, (*id.* at 678–710); Richard Campos, (*id.* at 710–39); Officer Jacqueline Walker, (*id.* at 739–45); Keith Mancini, (*id.* at 746–809); Kevin Courtney, (*id.* at 808–40); Kent Kessler, (*id.* at 842–56); Michael Konel, (*id.* at 858–88); Officer Walter Picht, (*id.* at 891-920); Hoist (*id.* at 923–1038); Dr. Whitney McBride, (*id.* at 1041–59); Sergeant Jimmy Brown, (*id.* at 1060–126); Agent Esposito, (*id.* at 1133–97); Stuart Barksdale, (*id.* at 1198–208); Pena, (*id.* at 1236–48); Nicholas Capalbo, (*id.* at 1248–80); Officer Thomas Drogan, (*id.* at 1281–98); Detective Craft, (*id.* at 1299–351); Joselyn Chernjawski, (*id.* at 1352–409); Detective Steven Horowitz, (*id.* at 1410–24); Detective Michael Meehan, (*id.* at 1424–61, 1500–12, 1536–71); Dr. Melvin Stone, (*id.* at 1491–500, 1513–35); Frank Nicolosi, (*id.* at 1572–606); Dr. Kunjlata Ashar, (*id.* at 1607–34); and Detective DiDio, (*id.* at 1678–766).  The People rested on February 4, 2013.  Both sides delivered closing statements, (*id.* at 1796–869), and the jury was charged on February 6, 2013, (*id.* at 1876–925).

On February 8, 2013, the jury submitted a note asking: "Does the defendant have to physically enter the premises in order to be found guilty of Burglary, or is the entry into the building by Parsley and White alone sufficient[?]" (*Id.* at 1982).  After hearing argument, the court charged the jury as follows:

> [I]f you find beyond a reasonable doubt that Parsley and White committed the crime of Burglary in the First Degree, and if you find beyond a reasonable doubt that the defendant solicited, requested, commanded, importuned, or intentionally aided Parsley and White in committing the crime of Burglary in the First Degree,

> and that the defendant beyond a reasonable doubt did so with the
> state of mind required for the commission of the crime of Burglary
> in the First Degree, then the People do not have to prove that the
> defendant physically entered the premises.

(*Id.* at 1986–87).  The jury reached a verdict on February 8, 2013 finding Petitioner guilty of one

count of Murder in the Second Degree, one count of Assault in the First Degree, one count of

Burglary in the Second Degree, and one count of Tampering with Physical Evidence. (*Id.* at

1988–89).  Petitioner was found not guilty of Attempted Murder in the Second Degree. (*Id.* at

1989).  On June 3, 2013, Petitioner was sentenced to 25-years-to-life imprisonment for Murder

in the Second Degree, 25-years imprisonment for Burglary in the First Degree, 25-years

imprisonment for Assault in the First Degree, and an indeterminate sentence of 1-and-1/3 to 4-

years imprisonment for Tampering with Physical Evidence. (Sentencing Tr. at 27–28).  All

sentences were ordered to run concurrently. (*Id.* at 28).

**D.  Direct Appeal**

Petitioner filed a direct appeal from his judgment. (Docket No. 16-2–16-6).  Petitioner

raised three challenges to his conviction: (1) that the jury's guilty verdict was not supported by

legally sufficient evidence and was rendered against the weight of the evidence; (2) the trial

court improperly admitted Hoist's identification testimony; and (3) the supplemental jury

instruction given in response to the jury's question about the legal standard for Burglary denied

Petitioner a fair trial, (Docket No. 16-2 at 20–35).  The People opposed. (Docket No. 16-7).  By

Decision and Order dated May 4, 2016, the New York State Appellate Division, Second

Department ("Appellate Division") affirmed Petitioner's conviction and sentence. *People v.*

*Thomas*, 139 A.D. 3d 764 (2d Dep't 2016).

By letter dated June 13, 2016, Petitioner sought leave to appeal to the New York State

Court of Appeals ("Court of Appeals"). (Docket No. 16-4).  Petitioner's leave application only

challenged the Appellate Division's decision concerning the trial court's introduction of Hoist's identification testimony. (Docket No. 16-8 at 2–3). The People opposed Petitioner's leave application, (Docket No. 16-9), which the Court of Appeals denied on August 25, 2016. *People v. Thomas*, 28 N.Y. 3d 937 (2016).

### E.  Federal Habeas Corpus Proceedings

Petitioner filed his Petition on September 11, 2017. (Petition at 18). Respondent opposed the Petition on April 25, 2018 and Petitioner replied on November 5, 2018. On June 26, 2018, Petitioner sought leave to amend his petition to add two new claims and to hold his Petition in abeyance until a decision was issued on his writ of error *coram nobis* in the Appellate Division. (Docket No. 20). Respondent opposed the motion. (Docket Nos. 22, 23). The Court denied Petitioner's motion to amend on July 23, 2018 on the grounds that Petitioner's proposed claims were barred by the statute of limitations. (Docket No. 24).

## II.  APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state court criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER)(PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[4] The procedural and substantive standards are summarized below.

---

[4] If Petitioner does not have access to cases cited herein that are available only by electronic database, then he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

## A.  Exhaustion as a Procedural Bar

A habeas petition may not be granted unless the petitioner has exhausted his claims in

state court. *See* 28 U.S.C. § 2254(b).  As the statute prescribes:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> (A) the applicant has exhausted the remedies available in the courts of the
>> State; or
>>
>> (B)(i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the
>> rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in
> the courts of the State, within the meaning of this section, if he has the right under
> the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)–(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the

same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*,

262 F.3d 118, 123 (2d Cir. 2001) (internal quotations omitted).  If a petitioner "cites to specific

provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his

constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see*

*also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the

Fourteenth Amendment" presents a federal constitutional claim to the state courts).  However, a

petitioner may fairly present his claim even without citing to the U.S. Constitution. *See Daye v.*

*Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).[5]  Fair presentation includes

---

[5] "[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim,
even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing
constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c)

petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999) ("[A] state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement[.]").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotations omitted).  In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only one direct appeal. *See Dasney v. People of the State of New York*, No. 15 Civ. 5734 (RJS), 2017 WL 253488, at *5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20);[6] *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals.").  Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*,

---

assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 194.

[6] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. App. R. 500.20(a) (emphasis added).

No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record–based must be raised in a direct appeal…. It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman v. New York*, No. 09 Civ. 0058T, 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim — by way of another CPL § 440 motion — is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.") (citing N.Y. C.P.L. § 440.10(2)(c)).[7]

## B.  Adequate and Independent State Grounds as a Procedural Bar

Furthermore, "[i]t is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729); *see also Downs v. Lape*, 657 F.3d 97, 23 (2d Cir. 2011).  This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

"A state court decision will be 'independent' when it 'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  In the normal case, a ground is adequate "only if it is

---

[7] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

based on a rule that is 'firmly established and regularly followed' by the state in question."
*Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003).  A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal quotations omitted).

To avoid procedural default of an unexhausted claim or a claim decided on an adequate and independent state ground, a petitioner must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).  "The cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012).  The petitioner may establish prejudice by showing that the alleged trial errors "substantial[ly] disadvantage[]" the petitioner and "infect[ed] his entire trial with error of constitutional dimensions." *See id*. at 112.  A fundamental miscarriage of justice is established where a petitioner demonstrates that he "is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)).

## C.  AEDPA Standard of Review

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015).  AEDPA provides that an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotation marks omitted). Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). When "a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question," the federal habeas court must assume the claim was adjudicated on the merits. *Id.* at 292. This "presumption is a strong one that may be rebutted only in unusual circumstances." *Id.* at 302.

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA deference to that state court ruling.[8] 28 U.S.C. § 2254(d)(1)–(2). In the context of AEDPA deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state–court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is

---

[8] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required. . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005).

contrary to such clearly established federal law if it 'applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent.'" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than "incorrect or erroneous" — it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must "consider 'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v.*

-15-

*Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (quoting *Richter*, 562 U.S. at 102).

AEDPA "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it." *Fry v. Pliler*, 551 U.S. 112, 119 (2007) ("'a writ of habeas corpus . . . shall not be granted' unless the conditions of § 2254(d) are met") (quoting 28 U.S.C. § 2254(d)).  Therefore, even if a state court decision is "contrary to, or involved an unreasonable application of" federal law, the petitioner still carries "the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012); 28 U.S.C. § 2254(d).

## III.  DISCUSSION

Petitioner argues that he is entitled to habeas relief on the following grounds: (1) the verdict was based on improperly admitted identification evidence, (Petition at 7–8, 10); (2) the verdict was not supported by sufficient evidence, (*id.* at 2–3); and (3) the trial court's response to the jury's note concerning the Burglary charge denied Petitioner a fair trial, (*id.* at 11).

## A.  Petitioner's Claim that Hoist's Identification Testimony Was Improperly Admitted Implicates a State-Law Issue That Is Not Cognizable on Federal Habeas Review

Petitioner argues that he is entitled to habeas relief because the trial court improperly admitted Hoist's testimony identifying Petitioner in MTA surveillance photographs. (Petition at 7–8, 10; Pet'r Reply at 2, 6–8).  Petitioner exhausted this claim by including it in his brief to the Appellate Division, (Docket No. 16-2 at 9–12), and his application for leave to the Court of Appeals, (Docket No. 16-8 at 2–3). *See O'Sullivan*, 526 U.S. at 845.  The Appellate Division ruled on the merits of Petitioner's claim concerning admission of Hoist's identification testimony, holding that:

> The Supreme Court did not improvidently exercise its discretion in
> permitting the defendant's girlfriend at the time of the crimes in

> question, who did not witness them, to testify that, in her opinion,
> he was the individual depicted in certain photographs derived from
> a surveillance video, as there was some basis for concluding that
> she was more likely than the jury to correctly determine whether
> the defendant was depicted in the photographs.

*Thomas*, 139 A.D. at 765.  Respondent argues that the trial court's admission of Hoist's

identification testimony was based on state evidence rules and therefore, is not cognizable on

federal habeas review. (Resp't Br. at 8).  Respondent further argues that Hoist's identification

testimony was admissible under New York law.[9] (*Id.* at 20–21).

The Court agrees with Respondent that the trial court's decision to admit Hoist's

testimony was based on state law.  After a lengthy colloquy at the pre-motion conference

concerning the admissibility of Hoist's testimony, (Pretrial Hr'g Tr. at 210–19), Petitioner sought

leave to the Court of Appeals "to clarify the applicable evidentiary standard" set forth in *People*

*v. Russell*, 79 N.Y.2d 1024 (1992). (Docket No. 16-8 at 2).  Similarly, in his brief to the

Appellate Court, his Petition, and his Reply, Petitioner challenges *New York's* rule regarding the

admissibility of witness identification testimony where the testifying individual is not an

eyewitness to the crime. (Docket No. 16-2 at 9–12; Petition at 7–8; Pet'r Reply at 2, 7–8).

For instance, in Petitioner's appellate brief, he argues that *People v. Russell*, 165 A.D.2d

327 (2d Dep't 1991) and its progeny should not apply, and that the court should instead be

guided by *People v. Coleman*, 78 A.D.3d 457 (1st Dep't 2010). (Docket No. 16-2 at 9–12).  Both

*Russell* and *Coleman* address New York's evidence rules.  While the court in *Russell* determined

that the issue before it was one of first impression, and accordingly performed an extensive

review of out-of-state and federal cases, the court's holding that "under the proper

circumstances, a lay witness, even though not an eyewitness to the crime, may be allowed to

---

[9] The Court need not opine on the admissibility of Hoist's identification testimony since this claim is not reviewable in a habeas corpus petition.

express his or her opinion that the individual depicted in the photograph is the defendant," established new *state* law. *See* 165 A.D.2d at 330–36. Likewise, the court in *Coleman* relied on New York Court of Appeals cases, including *Russell*, to conclude that "[a] lay witness may offer an opinion about the identity of the person captured in a photograph or videotape to aid the jury in cases where the witness is more likely to correctly identify the person than is the jury." 78 A.D. at 458 (internal quotations and alternations omitted). Accordingly, the Court finds that Petitioner's claim concerns the state court's interpretation of a state evidentiary rule.

It is well-settled that "[a] State court's evidentiary rulings, even if erroneous under State law, generally do not present constitutional issues cognizable in a habeas corpus petition." *Linton v. Bradt*, 775 F. Supp. 2d 574, 577 (E.D.N.Y. 2011) (citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)); *see also Steinhilber v. Kirkpatrick*, 18 Civ. 1251(VB)(JCM), 2020 WL 9074808, at *17 (S.D.N.Y. Aug. 21, 2020) ("The erroneous admission of evidence does not rise to the level of a constitutional violation upon which a writ of habeas corpus may be issued unless the evidence is so extremely unfair that its admission violates fundamental concepts of justice.") (internal quotations omitted). Thus, Petitioner is only entitled to relief if he establishes that the supposed evidentiary error "was so pervasive that it denied [him] a fundamentally fair trial." *Steinhilber*, 2020 WL 9074808, at *17 (quoting *Silva v. Keyser*, 271 F. Supp. 3d 527, 541 (S.D.N.Y. 2017)). Put another way, Petitioner bears the burden of showing that the "erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide a basis for the conviction or to remove a reasonable doubt that would have existed on the record without it." *Stewart v. Mazzuca*, 275 F. Supp. 2d 308, 312–13 (E.D.N.Y. 2003) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)).

Petitioner argues that "the only evidence of the petitioner's identification as the perpetrator was provided by … Hoist [who] … admitted that she made her identification only

after [the] investigating officer told her that [it was] petitioner [in the photographs]." (Pet'r Reply at 6). However, there is ample evidence to support Petitioner's convictions. First, a witness provided police with the license plate number for the Truck caught on MTA surveillance footage driving toward Yonkers on the morning of the shooting and toward Long Island approximately eighteen minutes after the shooting. (Trial Tr. at 274–75, 537–38, 603–10, 666, 674, 943). Neighbors observed the Truck in different spots in the parking lot of Hackley's apartment building on the day of the murder. (*Id.* at 407–20, 516–20, 546, 627–35, 714–15, 719–21, 731). The Truck was registered to Petitioner's aunt, with whom Petitioner lived. (Pretrial Hr'g Tr. at 20, 28). When Petitioner was pulled over in May 2010, Petitioner told police that he regularly drove the Truck, (*id.* at 29), which had distinctive features such as tinted windows, silver chrome on the handles and gas lid, and rain guards, (Trial Tr. at 928).

Second, the box of medical supplies that White used to pose as a UPS delivery person was addressed to the hospital where Petitioner's aunt worked. (*Id.* at 816–17, 848, 851). Third, Hoist testified that the backseat of the Truck was covered in blood when he picked her up on the evening of April 21, 2010, and that Petitioner stopped at a Walgreens to purchase cleaning product to remove the blood. (Trial Tr. at 934–39, 964). This was corroborated by law enforcement, who confirmed that the blood found in the Truck had a high statistical probability of belonging to White. (*Id.* at 1250–59, 1376–77, 1384, 1392). Fourth, eyewitnesses saw White limp out of Hackley's apartment building, (*id.* at 208, 536), and Petitioner told Hoist that he had taken White to the hospital on April 21, 2010, (*id.* at 940). Fifth, Petitioner did not show up for work on the day of the killing and did not explain his absence. (*Id.* at 869, 878). Sixth, Hoist testified that Petitioner repeatedly told her he had "fucked up" and described himself as a "getaway driver" in an incident "uptown," in which a "scuffle" ensued. (*Id.* at 257–58, 932–35,

940–42).  Last, upon his arrest, Petitioner asked police why it "took you guys so long to come and arrest [him]." (*Id.* at 1741–44).

On this record, even absent Hoist's identification testimony, there was ample evidence on which the jury could have found Petitioner guilty beyond a reasonable doubt of the crimes charged. *See Stewart*, 275 F. Supp. 2d at 312.  Consequently, Petitioner was not denied a fair trial and his due process rights were not violated. *See id.*

## B.  Petitioner's Claim Regarding the Sufficiency of the Evidence Against Him Is Procedurally Barred

Petitioner argues that the verdict was unsupported by legally sufficient evidence.[10]  The Appellate Division denied Petitioner's legal sufficiency claim pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 470.05(2), for failure to preserve. *Thomas*, 139 A.D. at 764.  The Appellate Division ruled in the alternative that Petitioner's claim was meritless. *Id.* at 764–65.

Respondent maintains that Petitioner's claim is procedurally barred for two, independent reasons.  First, Respondent argues that Petitioner's claim is unexhausted, but procedurally barred. (Resp't Br. at 5–6 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  Second, Respondent maintains that Petitioner's claim was adjudicated based on an adequate and independent state ground, namely, the contemporaneous objection rule, N.Y.C.P.L. § 470.05(2),

---

[10] Regarding sufficiency of the evidence, the Petition only argues that "the verdict of guilt was unsupported by legally sufficient evidence." (Petition at 7; *see generally* Pet'r Reply at 6–7).  However, since the Appellate Division opined on both (1) whether the verdict was supported by "legally sufficient" evidence, and (2) whether the verdict was "against the weight of the evidence," *Thomas*, 139 A.D.3d at 764–65, Respondent addresses both issues in its brief, (*see* Resp't Br. at 5–7, 12–18).  It is well-established that "weight of the evidence and legal sufficiency are two distinct claims, each requiring a discrete analysis." *Rubin v. Lamanna*, No. 18-CV-1924, 2019 WL 3557693, at *15 (E.D.N.Y. Aug. 5, 2019).  However, even assuming, *arguendo*, that Petitioner raised a "weight of the evidence" claim on habeas review—which even under a liberal reading of his Petition, he did not—it is axiomatic that "[a] 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure § 470.15(5)" that is not cognizable on federal habeas review. *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001).  Accordingly, notwithstanding Respondent's references to a "weight of the evidence" claim in its papers, (Resp't Br. at 5–7), the Court will address only Petitioner's claim that the verdict was not supported by sufficient evidence.

and therefore cannot be addressed by this Court. (*Id.* at 7).  Respondent contends that Petitioner has not shown "actual innocence" or "cause and prejudice," sufficient to overcome either default. (*Id.* at 6).  Last, Respondent argues that notwithstanding Petitioner's default, the verdict was supported by legally sufficient evidence. (*Id.* at 12–18).  Petitioner summarily argues that he "fairly presented" his claim regarding the sufficiency of evidence to the state court and exhausted his state court remedies. (Pet'r Reply at 6).

The Court finds that Petitioner's claim regarding the sufficiency of the evidence is unexhausted but procedurally barred.  Further, Petitioner's claim was resolved on adequate and independent state grounds, precluding this Court's review.  Finally, Petitioner has neither shown "cause and prejudice," nor "actual innocence" to overcome his procedural default.

## 1.  Petitioner's Claim Regarding the Sufficiency of the Evidence Is Unexhausted, but Procedurally Barred

"The federal habeas corpus statute, 28 U.S.C. §§ 2254(b) and (c), embodies the long-established principle that a state prisoner seeking federal habeas review of his conviction ordinarily must first exhaust available state remedies." *Daye*, 696 F.2d at 190.  The Supreme Court has clearly interpreted 28 U.S.C. § 2254's exhaustion doctrine to require a petitioner to raise the claims he seeks to have resolved on federal habeas review to the highest court in the state in which the petitioner was convicted. *See O'Sullivan*, 526 U.S. at 845.  This rule applies even where "a state court of last resort … has discretionary control over its docket." *Id.* ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  Thus, to satisfy 28 U.S.C. § 2254, "[i]n New York, a defendant seeking further appeal in a criminal case must apply for leave by letter application to the Court of Appeals." *Harris v. Fischer*, 438 Fed. App'x 11, 13 (2d Cir. 2011).

Petitioner failed to "fairly present[]" his claim that the verdict was not supported by sufficient evidence to the state court. *See id.*  Petitioner did not include this claim in his application for leave to the Court of Appeals. (*See* Docket No. 16-8).  Petitioner specifically sought leave to the Court of Appeals "to clarify the applicable evidentiary standard" set forth in *People v. Russell*, 79 N.Y. 2d 1024 (1992), which concerns the admissibility of "lay" identification testimony. (*Id.* at 1–2).  Because Petitioner did not raise his legal sufficiency claim in his application for leave to the Court of Appeals, Petitioner failed to appraise the state court of "both the factual and legal premises of" his federal claim, as is required by AEDPA. *See Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191).  Consequently, Petitioner's claim is unexhausted. 28 U.S.C. § 2254(b)(1), (c).

Furthermore, although Petitioner's claim is unexhausted, Petitioner has no further recourse from the state courts.  "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing N.Y.C.P.L. § 440.10(2)(c)).  Thus, state courts in New York "routinely deny motions under section 440.10(2)(c)" as procedurally barred "where a defendant has previously failed to raise record-based arguments on appeal." *Taylor v. Poole*, No. 07 Civ. 6318(RJH)(GWG), 2009 WL 2634724, at *16 (S.D.N.Y. Aug. 27, 2009).  Petitioner's claim that the verdict was unsupported by sufficient evidence is record-based and thus, not reviewable in a N.Y.C.P.L. § 440.10 motion. *See, e.g.*, *Festus v. Noeth*, 17-CV-3941 (JMA), 2020 WL 7042666, at *7 (E.D.N.Y. Nov. 30, 2020) (collateral review precluded where "insufficient evidence claim was record-based, and, as such, was reviewable on direct appeal").  Accordingly, Petitioner's claim is procedurally defaulted for the purposes of federal habeas review as well.

**2.  The Appellate Division's Decision Was Based on an Adequate and Independent State Ground**

Assuming, *arguendo*, that Petitioner had not defaulted his claim that the verdict was unsupported by legally insufficient evidence, the Appellate Division resolved Petitioner's claim on an adequate and independent state law ground, precluding federal review. *See Harris*, 489 U.S. at 262.  It is axiomatic that "an adequate and independent finding" by a state court "of procedural default will bar federal habeas review of a federal claim." *Id.*  Put another way, federal courts "will not review questions of federal law presented in a habeas petition when the state court's decisions rest upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone*, 556 U.S. at 465 (quoting *Coleman*, 501 U.S. at 729).  A state-law ground is "adequate" if "the rule upon which the state court relied is 'firmly established and regularly followed.'" *Downs*, 657 F.3d at 102 (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)).

The Appellate Division found that Petitioner's claim regarding the sufficiency of the evidence against him was not preserved for appellate review pursuant to N.Y.C.P.L. § 470.05(2), *Thomas*, 139 A.D. at 764, known as the "contemporaneous objection" rule, *see Kozlowski v. Hulihan*, 511 Fed. App'x 21, 24 (2d Cir. 2013).  The contemporaneous objection rule requires "any matter a party wishes the appellate court to decide to have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Cruz v. Hallenbeck*, 16-cv-9014 (JGK), 2018 WL 2290695, at *2 (S.D.N.Y. May 18, 2018) (quoting *People v. Luperon*, 85 N.Y.2d 71, 78 (1995)).  The Second Circuit made clear in *Downs* that "New York's contemporaneous objection rule … is a firmly established and regularly followed New York procedural rule." *Winters v. Sticht*, 16-CV-5027 (LAP)(KNF), 2021 WL 406742, at *2 (S.D.N.Y. Feb. 4, 2021) (internal citations omitted);

-23-

*see also Kozlowski*, 511 Fed. App'x at 25–26.  As such, Courts have consistently found that a state court's invocation of the contemporaneous objection rule precludes federal habeas review. *See, e.g.*, *Cruz*, 2018 WL 2290695, at *2 (collecting cases); *Winters*, 2021 WL 406742, at *2 (the Appellate Division's "adherence to the [contemporaneous objection rule] … bars the federal habeas court from reviewing Petitioner's claims").  Because the Appellate Division denied Petitioner's claims regarding the sufficiency of the evidence based on the contemporaneous objection rule, which is an adequate and independent state-law ground, this Court is barred from reviewing this claim. *See Downs*, 657 F.3d at 104.

### 3.  Petitioner Has Neither Shown "Cause and Prejudice" Nor "Actual Innocence"

Petitioner has neither shown cause and prejudice nor actual innocence, which are required to overcome a procedural default. *See Sweet*, 353 F.3d at 141; (*see generally* Petition; Pet'r Reply).  "A habeas petitioner may avoid … [procedural] default … by showing cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet*, 353 F.3d at 141.  Petitioner has not argued cause and prejudice for his default. (*See generally id.*).  The Court construes Petitioner's papers as asserting that he is "actually innocent."[11] (Pet'r Reply at 3–4, 6).

To overcome the procedural bar, a petitioner must advance a claim of actual innocence that is "both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012).  To be credible, an actual innocence claim "requires petitioner to support his allegations of

---

[11] Petitioner has not arguably raised "cause and prejudice" to overcome his default. (*See generally* Petition; Pet'r Reply).  However, construing Petitioner's pleading liberally, the Court reads Petitioner's papers as arguing "actual innocence." *Cf Sweet*, 353 F.3d at 142 (analyzing actual innocence claim where Petitioner "arguably raised [actual innocence] as part of his ineffectiveness claim," where Petitioner set forth a theory under which he had to be "'actually innocent' of one of the two charges because he could have not acted both intentionally and recklessly with respect to the same result.").  Petitioner argues that admission of Hoist's identification of Petitioner was "irreconcilable—pointing to both guilt and innocence." (Pet'r Reply at 3-4, 6).  The Court liberally construes this assertion as an argument that Petitioner was actually innocent of the crimes charged. *See Sweet*, 353 F.3d at 142.

constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To be compelling, "petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). "Credible claims of actual innocence are 'extremely rare.'" *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (quoting *Schlup*, 513 U.S. at 321). Petitioner does not offer any new evidence to support his allegation of innocence. (*See generally* Petition; Pet'r Reply). Petitioner's allegation of actual innocence is therefore neither credible nor compelling. Therefore, Petitioner has not met his burden of overcoming his procedural default. *See Rivas*, 687 F.3d at 541. In sum, Petitioner's claim regarding the sufficiency of the evidence presented at trial is procedurally defaulted and cannot be reviewed by this Court.[12]

## C. Petitioner's Claim That the Trial Court Improperly Responded to the Jury's Note Regarding the Burglary Charge Is Procedurally Barred

Petitioner argues that the trial court provided an "improper supplemental instruction," by answering the jury's question regarding whether Petitioner had to physically enter the apartment building to be found guilty of Burglary "in the negative." (Petition at 11). During deliberations, the jury asked the court whether Petitioner had "to physically enter the premises in order to be found guilty of Burglary, or [whether] the entry into the building by Parsley and White alone was sufficient" (Trial Tr. at 1982). The trial court heard argument and then charged the jury as follows:

---

[12] Respondent also argues, in the alternative, that the Appellate Division's ruling regarding the sufficiency of the evidence was neither contrary to, nor an unreasonable application of the Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. 307 (1979). (Resp't Br. at 14–18). However, since Petitioner's claim is procedurally defaulted, the Court need not reach the merits of this claim.

> [I]f you find beyond a reasonable doubt that Parsley and White
> committed the crime of Burglary in the First Degree, and if you
> find beyond a reasonable doubt that the defendant solicited,
> requested, commanded, importuned, or intentionally aided Parsley
> and White in committing the crime of Burglary in the First Degree,
> and that the defendant beyond a reasonable doubt did so with the
> state of mind required for the commission of the crime of Burglary
> in the First Degree, then the People do not have to prove that the
> defendant physically entered the premises.

(*Id.* 1986–87). Petitioner maintains that the trial court's supplemental instruction deprived him of a fair trial, violating his Due Process rights. (Pet'r Reply at 8). Respondent counters that Petitioner's claim is unexhausted and presents an issue of state law that is not cognizable on federal habeas review. (Resp't Br. at 5–6, 9–10).

Petitioner's claim regarding the trial court's supplemental jury instruction is procedurally barred for two, distinct reasons. First, Petitioner's claim is unexhausted, but procedurally barred. *See Reyes*, 118 F.3d at 139. Petitioner did not exhaust this claim, as he did not present it in his letter requesting leave to the Court of Appeals. (*See generally* Docket No. 16-8). Because Petitioner did not present his claim to the highest state court in New York, as is required, *see O'Sullivan*, 526 U.S. 845, his claim is unexhausted and may not be reviewed by this Court, *see Jones*, 126 F.3d at 414; 28 U.S.C. § 2254(b)(1), (c).

However, because Petitioner has no further recourse in state court, his claim is deemed exhausted. *See Reyes*, 118 F.3d at 139. Petitioner used the sole direct appeal provided by New York law, *see Dasney*, 2017 WL 253488, at *5; N.Y. Ct. App. R. § 500.20, which was denied, *see People v. Thomas*, 28 N.Y.3d 937 (2016). Moreover, Petitioner is precluded from attacking his conviction under N.Y.C.P.L. § 440.10 because the issue of whether the trial court's supplemental jury instruction was proper is record based and not a "collateral issue." *See* N.Y.C.P.L. § 440.10(2)(c); *Hawkins v. Graham*, No. 1:12–CV–0643(MAT), 2014 WL 317842, at *5 (W.D.N.Y. Jan. 29, 2014) (finding that petitioner was barred from raising "jury instruction

claim concern[ing] a ruling by the trial court" in a § 440.10 motion because the claim was "clearly … record based and could have been raised on direct appeal"); *see also Garcia v. Laclair*, No. 06 Civ. 10196(SHS)(DF), 2011 WL 1097414, at *16 (S.D.N.Y. Jan. 3, 2011) ("trial counsel's failure to request a particular jury instruction could have been raised upon direct appeal but was not, and therefore could not be raised on state collateral review under New York law."). Thus, Petitioner's claim is unexhausted, but procedurally barred.

Second, this Court cannot review Petitioner's claim regarding the trial court's supplemental jury instruction because it was decided on an adequate an independent state-law ground. The Appellate Division denied Petitioner's claim pursuant to the contemporaneous objection rule, finding that it was unpreserved for appellate review under N.Y. C.P.L § 470.05(2). *Thomas*, 139 A.D. at 765. As discussed herein, the contemporaneous objection rule is an independent and adequate ground for dismissal of a claim, precluding federal review. *See supra*, Section III.B.2. Furthermore, Petitioner has not shown "cause and prejudice" or "actual innocence" to overcome his procedural default. *See supra*, Section III.B.3. Consequently, Petitioner's claim regarding the trial court's supplemental jury instruction is procedurally defaulted and not cognizable on habeas review.[13]

## IV. CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be denied. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529

---

[13] Respondent further contends that, assuming, *arguendo*, that Petitioner's claim was cognizable on federal habeas review, the trial court's ruling was not contrary to, or an unreasonable application of the Supreme Court's holding in *Waddington v. Sarausad*, 555 U.S. 179 (2009). (Resp't Br. at 24–25). Since the Court finds that Petitioner's claim is procedurally defaulted, the Court need not reach the merits of this claim.

U.S. 473, 483–84 (2000).  The Clerk of Court is requested to mail a copy of this Report and Recommendation to the *pro se* Petitioner.

## V.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  June 1, 2023
      White Plains, New York

**RESPECTFULLY SUBMITTED,**

*Judith C. McCarthy*

JUDITH C. McCARTHY
United States Magistrate Judge